UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICARDO CHUB,

Petitioner,

v.

U.S. ATTORNEY GENERAL, et al.,

Respondents.

Case No.  1:26-cv-02436-JLT-HBK (HC)

FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS IN PART[1]

(Doc. 1)

FIVE-DAY OBJECTION PERIOD

Petitioner Ricardo Chub, an immigrant detainee in U.S. Immigration Customs and Enforcement ("ICE") custody at the California City Immigration Processing Center in California City, California, initiated this action by filing a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241 on March 30, 2026.  (Doc. 1, "Petition").  Liberally construed, the Petition raises three grounds for relief: (1) Petitioner's detention without a bond hearing violates his procedural due process rights under the Fifth Amendment; (2) his "indefinite" detention violates his substantive due process rights; and (3) his detention is causing "irreparable" physical and psychological harms.  (*Id*. at 6).  As relief, Petitioner seeks, *inter alia*, immediate release from

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2025).

custody. (*Id*. at 7).

Respondents argue that: (1) the Court should deny the Petition because Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(A), (2) Petitioner has not established a substantive due process violation, and (3) Petitioner's procedural due process claim fails under the *Mathews v. Eldridge*[2] test. (Doc. 6). Petitioner did not file a reply, and the deadline to do so has passed. (*See* docket).

Significant here is Petitioner's status as a Guatemalan citizen who was detained at the border and later released on his own recognizance. For the reasons below, the undersigned recommends that the district court grant the Petition in part on Petitioner's procedural due process claim (claim one).[3]

## I.    BACKGROUND

Petitioner is a native and citizen of Guatemala. He was encountered at a port of entry by United States Border Patrol on March 14, 2021.[4] (Doc. 6-1 at 2). On March 15, 2021, he was issued an Order of Release on Recognizance. (Docs. 6-3, 6-4). On January 23, 2026, Petitioner was encountered while in custody at the Leon County Jail. (Doc. 6-1 at 2). He was issued a Notice to Appear ("NTA") and charged as subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i) (entry without inspection) and 8 U.S.C. § 1182(a)(7)(i)(I) (no valid entry document). (Doc. 6-2). On January 29, 2026, ICE revoked Petitioner's Order of Recognizance "based on bedspace availability." (Doc. 6-1 at 2).

At the time the Petition was filed, Petitioner remained detained in ICE custody at the California City Immigration Processing Center. (Doc. 1).

## II.    APPLICABLE LAW AND ANALYSIS

Under 28 U.S.C. § 2241(c)(3), a district court may grant a writ of habeas corpus when the

---

[2] 424 U.S. 319 (1976).

[3] In light of the Court's conclusion that Petitioner's re-detention violates his procedural due process rights under the Fifth Amendment, the Court declines to address Petitioner's additional claims for relief.

[4] Respondents' briefing indicates that Petitioner was charged initially as inadmissible pursuant to 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(i)(I). (Doc. 6 at 1). However, the documents submitted in support of their opposition does not include the initial Notice to Appear or any evidence that Petitioner was initially charged as inadmissible under those provisions. (*See generally* Docs. 6-1, 6-2, 6-3).

petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." District courts retain jurisdiction under § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of a removal order. *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 538 U.S. 281, 294 (2018).

A. Statutory and Legal Framework

The Court briefly outlines the statutory framework governing detention authority under the INA and the recent changes in how the Executive agencies interpret these statues.

1. Mandatory Detention under 8 U.S.C. § 1225(b)

Section 1225(a)(1) provides that an alien present in the United States who has not been admitted, or who arrives in the United States, is deemed an "applicant for admission." "Arriving alien" means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or … an alien interdicted … and brought in to the United States by any means." 8 C.F.R. § 1.2; *see also* 69 Fed. Reg. 48,877 (Aug. 11, 2004) (authorizing expedited removal of those "encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border."). Applicants for admission must be inspected by immigration officers consistent with U.S. immigration law. *Jennings*, 583 U.S. at 287 (quoting § 1225(a)(3)).

If an immigration officer determines that an arriving alien is inadmissible and the alien does not express an intention to apply for asylum or a fear of persecution, the officer must order the alien removed without further hearing or review. § 1225(b)(1)(A)(i); 8 U.S.C. § 1182(a)(7). With certain exceptions, § 1225(b)(2)(A) directs that if an applicant for admission is not "clearly and beyond a doubt" entitled to be admitted, "the alien *shall* be detained" for removal proceeding under 1229a. § 1225(b)(2)(A) (emphasis added). Applicants for admission may be released on parole only for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)).

As the Supreme Court explained in *Jennings v. Rodriguez*,

> [r]ead most naturally, §§ 1225(b)(1) and (b)(2) … mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of

3

the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

583 U.S. at 297.

2.   Discretionary Detention under 8 U.S.C. § 1226(a)[5]

Section 1226(a) authorizes arrest and detention of an alien pending a decision on removal, and grants the government broad discretion to continue detention or release the alien on bond or conditional parole.  § 1226(a); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)).  Federal regulations provide that noncitizens detained under § 1226(a) receive bond hearings at the outset of detention and must show by a preponderance of the evidence that they are not a danger to the community or a flight risk.  *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); Matter *of Guerra*, 24 I.& N. Dec. 37, 40 (B.I.A. 2006); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007).

After discretionary release under § 1226(a), the government may revoke bond or conditional parole and rearrest the noncitizen "at any time," but courts have held that rearrest must comply with constitutional constraints and generally requires a change in circumstances. *M.R.R. v. Chestnut*, 2025 WL 3265446, at *3 (E.D. Cal. Nov. 24, 2025) (internal citations omitted); *Martinez Hernandez v. Andrews*, 2025 WL 2495756, at *10 (E.D. Cal. Aug. 28, 2025) (while allowing for rearrest at any time, "this does not mean that DHS may exercise its discretion in a manner that is inconsistent with constitutional requirements.").

3.   Government's Change in Position

Until 2025, DHS applied § 1226(a) and its discretionary release framework to most

---

[5] Section 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)," mandating detention for an alien apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses." *Jennings*, 583 U.S. at 289 (emphasis in original).  In January 2025, the Laken Riley Act ("LRA") amended § 1226(c) to add a new category of alien ineligible for release under § 1226(a), including aliens deemed "inadmissible" for being "present in the United States without being admitted or paroled," who have been arrested for, charged with, or convicted of certain crimes.  LRA, Pub. L. No. 119-1 (Jan. 29, 2025); *see* 8 U.S.C. § 1182(a)(6)(A)(i), § 1226(c)(1)(E).

4

noncitizens in the United States without valid documentation.  *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *3 (N.D. Cal. Sept. 12, 2025); *see also, e.g., Escobar Salgado v. Mattos*, 2025 WL 3205356, at *3 (D. Nev. Nov. 17, 2025) (citing *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

In July 2025, the DHS and DOJ adopted a new position that § 1225, instead of § 1226, governs detention of all applicants for admission, including aliens present in the United States "who has not been admitted."  Under this view, such individuals are subject to mandatory detention under § 1225(b) without bond hearings before an immigration judge and are treated in the same manner as "'arriving aliens."  *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited January 7, 2026).  In September 2025, the BIA issued a precedential decision adopting this interpretation and holding that immigration judges lack bond authority over noncitizens present in the United States without admission, because they are applicants for admission subject to § 1225(b)(2)(A).  *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 at *9.

B.  Due Process

The Fifth Amendment's Due Process Clause protects "persons" within the United States, including noncitizens, from deprivation of liberty without due process of law.  *Trump v. J.G.G.*, 604 U.S. 670 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 305 (1993)*; Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001).  The scope of protection varies by immigration status and circumstance. *Zadvydas*, 522 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

Once noncitizens enter the country, even unlawfully, they are entitled to due process protections, and the Due Process Clause generally requires some form of hearing before the government deprives a person of liberty.  *Id*.; *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry,

5

irrespective of its legality.  In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'*"); see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

C.  Analysis

As a threshold matter, Respondents acknowledge that this Court has followed a "majority of courts" in holding that noncitizens who are already present in the United States are not "applicants for admission" subject to mandatory detention under § 1225(b); rather, their detention continues to be governed by § 1226(a) during removal proceedings.  (Doc. 6 at 3 (citing *Selis-Tinoco v. Noem*, 2025 WL 3567862, at *4 (E.D. Cal. Dec. 14, 2025); *Labrador-Prato v. Noem*, 2025 WL 3458802, at *4 (E.D. Cal. Dec. 2, 2025)); s*ee, e.g., Montero-Alvarez v. Alberran*, 2025 WL 3754116, at *4 (E.D. Cal. Dec. 29, 2025) (collecting cases); *C.A.R.V. v. Wofford*, 2025 WL 3059549, at *8 (E.D. Cal. Nov. 3, 2025); *Barco Mercado v. Francis*, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (collecting cases); *But see, e.g., Alonzo v. Noem*, 2025 WL 3208284, at *5 (E.D. Cal. Nov. 17, 2025); *Ramos v. Lyons*, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025).

Respondents ask the Court to distinguish the instant case from *Selis-Tinoco* and *Labrador-Prieto* because Petitioner is allegedly subject to mandatory detention under § 1225(b)(1) rather than § 1225(b)(2)(A).  (Doc. 6 at 3-4).  Before addressing Petitioner's due process claim, the Court briefly explains why this argument is inapposite.

In cases where a petitioner does not make a claim of asylum, § 1225(b)(1) applies: (1) if an arriving alien is initially determined to be inadmissible under 8 U.S.C. § 1182(a)(6)(C) or (a)(7); or (2) where an alien who has not been admitted or paroled into the United States is later determined inadmissible under 8 U.S.C. § 1182(a)(6)(C) or (a)(7), has not been contiguously present in the United States for two years preceding that determination, and is in a group designated by the Attorney General.  *See Pablo Sequen v. Kaiser*, 800 F. Supp. 3d 998, 1011 (citing §§ 1225(b)(1)(A)(i), (iii)).  Here, Respondents offer no evidence that an immigration officer found Petitioner inadmissible under 8 U.S.C. § 1182(a)(6)(C) or (a)(7) when he was initially encountered in 2021, and the determination he is inadmissible under those provisions in 2026 is "too late to trigger § 1225(b)(1) because [Petitioner] entered the United States more than

6

two years ago and has been continuously present in the country since then." *Id*.

Moreover, even assuming *arguendo* that Petitioner was processed initially under § 1182(a)(6)(C) or (a)(7), "[b]ecause Petitioner [was] released on [his] own recognizance after [his] initial detention at the border, [he is] also ineligible for expedited removal proceedings as [he has] been 'paroled' within the meaning of section 1225(b)(1)." *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 935 n.4 (N.D. Cal. 2025); V.*V. v. Warden, California City Immigration Processing Center*, 2026 WL 1396680, at *2 (E.D. Cal. May 19, 2026); *Singh v. Andrews*, 2026 WL 457139, at *1 n.1 (E.D. Cal. Feb. 18, 2026).

Here, Petitioner claims his detention without a bond hearing violates his procedural due process rights. (Doc. 1 at 6). Procedural due process requires the Court to determine: (1) whether a protected liberty interest exists; and if so, (2) what process is due. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Garcia v. Andrews*, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

Respondents do not dispute that Petitioner was apprehended upon entering the country and subsequently released on his own recognizance. (*See* Doc. 6). ICE initially has discretion under § 1226(a) to detain or release a noncitizen and may release the person if satisfied that release would not pose a danger or flight risk. *Rodriguez Diaz*, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom*, *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *Espinoza v. Kaiser*, 2025 WL 2675785, at *6 (E.D. Cal. Sept. 18, 2025) (noting a person on conditional parole is generally released on their own recognizance subject to certain conditions such as reporting requirements).

Thus, when ICE initially has discretion to detain or release a noncitizen pending removal proceedings, and chooses release, that individual has a protected liberty interest in remaining out of custody. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025). Respondents note Petitioner's Order of Recognizance was revoked on January 29, 2026. (Doc. 6 at 2). The record, however, shows that after his initial arrest at the Leon Country Sherriff Office on January 23,

2026, Petitioner was released on Order of Recognizance "based on bedspace availability," and that Order of Recognizance was revoked on January 29, 2026. (Doc. 6-1 at 2). Respondents submit no evidence that Petitioner's initial Order of Recognizance was revoked. While the OCurt is mindful of Petitioner's criminal history, it finds that his initial release and time in the community created a protected liberty interest in continued release following conditional parole. *See Solano v. Robbins*, 2025 WL 3718831, at *6 (E.D. Cal. Dec. 23, 2025) (collecting cases); *Pinchi*, 792 F. Supp. 3d at 1033.

To determine what process is due, courts apply the three-factor balancing test outlined in *Mathews v. Eldridge*:[6] 424 U.S. 319, 335 (1976). Respondents briefly argue Petitioner has not "clearly shown" he is entitled to a bond hearing "even if the *Mathews* test applied here." (Doc. 6 at 6-7).

First, the Court considers "the private interest that will be affected by the official action." *Id*. Petitioner's interest in remaining free from detention and maintaining community ties is substantial. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process] Clause protects."); *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (recognizing it is "beyond dispute" that the "private interest at issue here is 'fundamental'"); *see also Pinchi*, 792 F. Supp. 3d at 1033. Petitioner's private interest is heavily affected, and this factor weighs in favor of Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such an interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Because Petitioner received no pre-deprivation custody redetermination hearing, the risk of erroneous deprivation is high, and the value of a hearing

---

[6] The Ninth Circuit has noted that the Supreme Court "when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz*, 53 F.4th at 1206-07. However, in light of the consistent employment of *Mathews* by district courts in the Ninth Circuit in determining whether due process applies in the context of re-detention of previously paroled noncitizens, the Court proceeds to apply those factors while still reserving judgment on whether *Mathews* is an "all embracing test" when encountering due process challenges by immigrant detainees. *See A.E. v. Andrews*, 2025 WL 1424382, at *4 (citing *Dusenbury v. United States*, 534 U.S. 161, 168 (2002) ("we have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims.").

before a neutral decisionmaker is significant, particularly where Respondents do not argue that he is a flight risk or danger or that failed to appear timely and consistently for immigration court hearings.  *See A.E. v. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the Court considers the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews*, 424 U.S. at 334.  Unquestionably, the government has a significant national interest in enforcing its immigration laws.  Indeed, it is a sovereign's fundamental right to control its borders, to protect national security, and ensure integrity in its immigration system.  However, Respondents do not explain how Petitioner threatens these interests or how the government's interest is weakened by affording him a hearing before a neutral decisionmaker.  Nor do Respondents offer evidence of how affording a hearing results in either a fiscal or administrative burden, which has been found to be "minimal" by other courts.  *See J.A.E.M. v. Wofford*, 2025 WL 3013377, at *7 (E.D. Cal. Oct. 27, 2025) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("In immigration court, custody hearings are routine and impose a 'minimal' cost.").  Because Respondents provided no notice or reasons prior to  re-detention, they have not demonstrated a significant governmental interest in Petitioner's detention.  *See Noori v. LaRose*, 2025 WL 2800149, at *11 (S.D. Cal. Oct. 1, 2025); *A.E. V. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

On this record, the *Mathews* factors weigh in Petitioner's favor, and the Court concludes his re-detention without a hearing violated his procedural due process rights.

D.  Conclusion and Remedy

The remaining question is the appropriate remedy: pre-deprivation versus post-deprivation process.  As the assigned district judge previously reasoned:

> The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (emphasis in original). However, the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Id.* at 128, 110 S.Ct. 975 (noting there may be "special case[s]" where a

pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 791 F.Supp.3d 1021, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 795 F.Supp.3d 1316, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted her detention was pretextual, given that ICE first became aware of petitioner's alleged violations a few hours before her immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for her arrest. *Id.* In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate release of in immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.

*12 In contrast, this Court ordered a bond hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretexual." *Id.* at * 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated her flight."). As this Court noted in *Martinez Hernandez*:

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. Carballo v. Andrews, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing Perera v. Jennings, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); Pham v. Becerra, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 791 F.Supp.3d 1021, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

*M.R.R.*, 2025 WL 3265446, at *11-12.

Here, the report generated at the time of Petitioner's re-detention indicates he encountered while in custody at the Leon County Jail "without local charges," and notes that he was previously charged with neglect of a child without great bodily harm in 2022.  (Doc. 6-1 at 2-3). Based on the reasoning above, the undersigned recommends the Court order Respondents to provide Petitioner with a prompt, post-deprivation hearing pursuant to § 1226(a).  *See M.R.R.*, 2025 WL 3265446, at *11-12.

Finally, consistent with numerous decisions of other courts in this circuit, at such a hearing the government must prove that Petitioner is a flight risk or danger to the community by clear and convincing evidence.  *Yosseline P.G. v. Noem*, 2026 WL 183732, at *5 (E.D. Cal. Jan. 23, 2026) (collecting cases); *J.E.H.G. v. Chestnut*, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) (noting immigrant's initial release reflected government's determination that the noncitizen is not a danger to the community or a flight risk, and that because the government initiated re-detention, it should bear the burden of justifying re-detention.).

Accordingly, it is hereby RECOMMENDED:

1.  The Petition for Writ of Habeas Corpus (Doc. 1) be GRANTED in part as follows:

    a.  Respondents be directed to provide Petitioner with a substantive bond hearing pursuant to § 1226(a), at which the Immigration Judge will determine whether Petitioner poses a risk of flight or a danger to the community if released.

    b.  At such a hearing, the government SHALL bear the burden of establishing, by clear and convincing evidence, that the Petitioner poses a danger to the community or flight risk.

2.  If released, Respondents be PERMANENTLY ENJOINED AND RESTRAINED from rearresting or re-detaining Petitioner absent compliance with constitutional protections, including at a minimum, (a) pre-deprivation notice of at least seven days; and (b) a pre-deprivation hearing at which the government bears the burden to show, by clear and convincing evidence, that Petitioner is likely to flee or pose a danger if not arrested.

3.  If legally sufficient circumstances justify arrest without notice in advance, a post-

deprivation hearing consistent with the requirements SHALL be provided within seven days of the arrest. Alternatively, if Petitioner becomes subject to a final order of removal and Petitioner receives notice of that order, Respondent may detain him solely for executing removal but MUST provide a bond hearing within the timeframe required by law.

4.   This case be CLOSED.

**NOTICE OF EXPEDITED OBJECTIONS**

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Given the recommendation to grant the petition in part, a party may file written objections with the Court within five (5) days of service of these Findings and Recommendations.**  *Id*.; Local Rule 304(b) (permitting court to set a different time).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**.  The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:     June 29, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE